**MANDATE**

14-1588-cr
United States v. Romano

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of November, two thousand and fifteen.

Present:
   PETER W. HALL,
   GERARD E. LYNCH,
     *Circuit Judges,*
   JED S. RAKOFF,
     *District Judge.*[*]

_____

UNITED STATES OF AMERICA,

   *Appellee*,

  v.                   No. 14-1588-cr

JOSEPH ROMANO,

   *Defendant-Appellant*.

_____

For Defendant-Appellant:  DANIEL S. NOOTER, Esq., Washington, DC.

---

[*] The Honorable Jed Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

1

| | |
|---|---|
| For Appellee: | UNA A. DEAN (David C. James, *on the brief*), Assistant United States Attorneys, *for* William J. Hochul, United States Attorney for the Western District of New York, Buffalo, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Keenan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Joseph Romano was convicted by a jury of conspiring to murder a federal judge and Assistant United States Attorney ("AUSA"), all in violation of 18 U.S.C. § 1117, in retribution for their roles in convicting and sentencing him for offenses related to a previous coin fraud scheme. According to the evidence presented at trial, the conspiracy took root when Romano, who was serving a 180 month sentence for mail and wire fraud, informed a fellow inmate of his desire to murder the judge and AUSA and mutilate their bodies. Based on this information, law enforcement set up a sting operation involving an undercover officer who posed as a contract killer. After paying the officer to assault a mechanic with whom he had a financial dispute, Romano offered to pay $40,000 for the murder of the judge and AUSA. The murders, of course, were never consummated. Romano was arrested, convicted, and sentenced, *inter alia*, to life in prison for his crimes. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Romano contends that the district court erred in denying his motion to suppress incriminating statements he made after being arrested, claiming that the arresting officers violated his *Miranda* rights by tricking him into believing he was entering a cooperation agreement with the government. *See United States v. Romano*, No. 12 CR. 691 JFK, 2013 WL 5278420, at **1, 6 (E.D.N.Y. Sept. 18, 2013). We review a district court's determination

2

regarding the constitutionality of a *Miranda* waiver *de novo* and its factual findings for clear error. *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015). In determining whether a defendant's confession was the product of coercion, the court considers "the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). Further, "[r]egardless of whether [an] agent's statements were false, misleading, or intended to trick and cajole the defendant into confessing, specific findings must be made that under the totality of the circumstances . . . the defendant's will was overborne by the agent's conduct." *Id*.

It was not error, much less clear error, for the trial court to find that there was "simply no evidence whatsoever of deceit by the agents." *Romano*, 2013 WL 5278420, at *6. The court noted that the agents did not actively question Romano until after he was transported from his prison cell to the FBI field office. *Id.* Further, Romano was informed of his *Miranda* rights both orally and in writing, and signed a written waiver that required him to initial next to each of the rights he was waiving. *Id.* at **5–6. The court credited the agent's testimony at the suppression hearing that Romano appeared to be calm and understood what was happening and found Romano's assertions to the contrary to be incredible. *Id.* at *6. Such "[c]redibility determinations are the province of the trial judges, and should not be overruled on appeal unless clearly erroneous." *United States v. Yousef*, 327 F.3d 56, 124 (2d Cir. 2003).

The court further noted that, although the agents had suggested that cooperation would be in Romano's interest because "it would be made known to the prosecutors and the judge," *Romano*, 2013 WL 5278420, at *6, it is well established that promises of leniency, without more, do not render a confession involuntary. *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) ("Generally, promises of leniency will not render a confession involuntary."); *United States v.*

3

*Bye*, 919 F.2d 6, 8–9 (2d Cir. 1990) (emphasizing that voluntariness of waiver is a "comprehensive inquiry" and that mentioning the benefits of cooperation is not *per se* coercive); *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir.1987) ("[A] confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials.").

Romano argues that his case is distinguishable from the foregoing cases because the agents did not merely hold out a hope of leniency but led him to believe that he was entering a formal cooperation agreement. Romano contends the officers' actions violated the spirit of *Missouri v. Seibert*, which prohibits "two-step" interrogation techniques designed to deliberately circumvent the requirements of *Miranda*. *See Missouri v. Seibert*, 542 U.S. 600, 618–22 (2004) (Kennedy, J., concurring). Even if we were to extend *Seibert*'s holding to situations in which a defendant is "tricked" by law enforcement into believing he is entering a cooperation agreement, Romano has not presented any evidence that the agents deceived him. The purported agreement signed by Romano makes no mention of a promise of leniency. It merely stated Romano's intention "to cooperate with the FBI and provide statements about crimes I know of and crimes in which I was personally involved." *Romano*, 2013 WL 5278420, at *3. Aside from this signed statement, there is no other evidence to support Romano's claims.

Romano further contends that the trial court's jury instructions on his entrapment defense were legally erroneous and confusing to the jury. We review challenges to jury instructions *de novo*. *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014). "Instructions are erroneous if they mislead the jury as to the correct legal standard or do not adequately inform the jury of the law." *Id.* (internal quotation omitted).

4

Entrapment is an affirmative defense with two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000). To establish inducement, a defendant must show "that it was the government, not he, that originated 'the criminal design.'" *United States v. Brand*, 467 F.3d 179, 189 (2d Cir. 2006) (quoting *Jacobson v. United States*, 503 U.S. 540, 548 (1992)). "If a defendant presents credible evidence of government inducement, then the prosecutor must show predisposition beyond a reasonable doubt." *Bala*, 236 F.3d at 94. The court instructed the jury that in order to prove his entrapment defense, Romano initially had the burden to show by "a preponderance of the evidence that a government agent originated the criminal design" of the crimes charged. If the jury so found, then the government would have the "burden to prove beyond a reasonable doubt that prior to first being approached by government agents, the defendant was ready and willing to commit the crime." JA 157–58.

Romano argues it was error to require the defense to show inducement by a preponderance of the evidence. He also asserts that the court conflated the inducement and predisposition prongs of the entrapment defense. These arguments are without merit. It is well established in this circuit that "a defendant hoping to assert the entrapment defense bears the burden of establishing inducement by a preponderance of the evidence." *Brand*, 467 F.3d at 190. To the extent that Romano asks us to overrule our prior precedents, we lack the power to do so; only the Court sitting *en banc* may overrule our prior decisions.[1] *Lotes v. Hai Precision Indus.*

---

[1] It is misleading to compare our precedents to that of sister circuits that have required a lower burden of production with respect to proving inducement, as those circuits have generally adopted a more stringent definition of what constitutes government inducement. *See United States v. Mayfield*, 771 F.3d 417, 431 (7th Cir. 2014) (comparing this circuit's "expansive understanding of inducement," which "encompasses almost *any* government solicitation of the crime," with other circuits that "define[] inducement as requiring more than mere government initiation or solicitation of the crime").

*Co.*, 753 F.3d 395, 405 (2d Cir. 2014). Moreover, Romano's assertion that the court blurred the inducement and predisposition prongs of the entrapment defense is simply not supported by the record. Testimony from a government informant regarding Romano's intentions and his detailed planning of the crime prior to the government's involvement is relevant to prove *both* Romano's predisposition to commit the crime and a lack of government inducement.

In any event, the evidence that Romano was not induced by the government and that he was predisposed to commit the crime was overwhelming. *See United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011) ("An error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." (internal alterations and quotation marks omitted)). For the inducement prong, the jury heard testimony that Romano had discussed his plans for revenge prior to any government involvement and that Romano himself had admitted to law enforcement that the murder plot "was his idea." GA066. A rational jury would have concluded that Romano, and no one else, initiated the conspiracy. Further, there was overwhelming evidence that Romano was predisposed to committing the crime, including his enthusiasm and prompt positive response when offered assistance in committing the murders and his behavior in threatening to kill a witness in his prior coin fraud case. *See Bala*, 236 F.3d at 93–94 (stating that government may prove disposition by showing defendant's "previously formed design to commit the crime" or his "ready response" to government's inducement). Thus, any error was harmless.

For these reasons, the judgment of the district court is AFFIRMED.

    FOR THE COURT:
    CATHERINE O'HAGAN WOLFE, CLERK

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit